USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/20/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
JAVIER TALANGO,

                                      Petitioner,

                    -against-                              15-CV-2477 (VEC)

CHRISTOPHER SHANAHAN, in his official
capacity as New York Field Office Director for
U.S. Immigration and Customs Enforcement;
DIANE McCONNELL, in her official capacity as
Assistant Field Office Director of U.S. Immigration
and Customs Enforcement; SARAH SALDAÑA,
in her official capacity as Principal Deputy              MEMORANDUM
Assistant Director of U.S. Immigration and                 OPINION & ORDER
Customs Enforcement; JEH JOHNSON, in his
official capacity as Secretary of the U.S.
Department of Homeland Security; LORETTA
LYNCH, in her official capacity as the Attorney
General of the United States; and the U.S.
DEPARTMENT OF HOMELAND SECURITY,

                                Respondents.
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Petitioner Javier Talango, a citizen of Belize and a lawful permanent resident of the United States, has been detained in immigration custody, without a bond hearing, since September 2014 pursuant to section 236(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1226(c). The sole issue in this case is whether an alien who is not detained upon his release from criminal custody is nevertheless "an alien described in paragraph (1)" of section 236(c). 8 U.S.C. § 1226(c)(2). This Court has already determined this precise legal issue, *see Cruz v. Shanahan*, --- F. Supp. 3d ---, No. 14-CV-9736, 2015 WL 409225 (S.D.N.Y. Jan. 30, 2015); so too have many other courts in this District, *see, e.g., Arjune v. Shanahan*, No. 15-CV-1551(AJP), 2015 WL 1529286, at *1 (S.D.N.Y. Apr. 7, 2015) (describing the identical cases as

"*deja vu* all over again"); *Gordon v. Shanahan*, No. 15-CV-261(JGK), 2015 WL 1176706 (S.D.N.Y. Mar. 13, 2015); *Rodriguez v. Shanahan*, --- F. Supp. 3d ---, No. 14-CV-9838(SN), 2015 WL 405633 (S.D.N.Y. Jan. 30, 2015); *Figueroa v. Aviles*, No. 14-CV-9360(AT), 2015 WL 464168 (S.D.N.Y. Jan. 29, 2015). The Second Circuit is also currently considering this precise legal issue. *See Lora v. Shanahan*, No. 14-2343-cv. Although the Court would ordinarily be inclined to stay the case pending the Circuit's decision, the deprivation of Talango's liberty without any individualized determination warrants immediate review. Accordingly, Talango's petition is GRANTED.

## BACKGROUND

The relevant facts are few and undisputed. Talango is a 48-year-old citizen of Belize who has lived in the United States as a lawful permanent resident since 1980. Between 1995 and 2011, Talango "was convicted of at least twenty-two crimes," Charles Decl. ¶ 5, including a conviction for an aggravated felony (Criminal Sale of a Controlled Substance in the fourth degree) in 2005 and a simple drug possession conviction in 2011, *id.* ¶¶ 12-13. Talango ascribes many of the problems in his life to his wife's death in early 2003; Talango claims that he "struggled to cope and fell into a pattern of drug abuse and homelessness." Pet'r Mem. at 3. Since 2007, Talango claims that he has been living peacefully at his parents' residence. *Id.* Agents from Immigration and Customs Enforcement ("ICE") arrested Talango on September 24, 2014; he has been in ICE custody since that time without a bond hearing (although he has persistently delayed the adjudication of the merits of his deportation proceedings).

## DISCUSSION

**I.     The Immigration and Naturalization Act**

The INA generally grants the Department of Homeland Security ("DHS")[1] the discretion to detain or release on bond aliens pending the determination whether they are to be deported. *See* 8 U.S.C. § 1226(a). There is an exception, however, which appears in subsection (c) of section 236:

> (1) . . . The Attorney General shall take into custody any alien who –
>
> > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> >
> > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> >
> > (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or
> >
> > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. . . .

---

[1] "Originally, the authority and duties imposed by § 1226(c) were those of the Attorney General; today, they belong to DHS." *Straker v. Jones*, 986 F. Supp. 2d 345, 351 (S.D.N.Y. 2013).

8 U.S.C. § 1226(c). The Court held in *Cruz*, and continues to believe, that the general rule established in subsection (a) (*i.e.*, that the Secretary has discretion to grant aliens bail pending a deportation decision) applies "except as provided in subsection (c)." *Id.* § 1226(a). Subsection (c), in turn, unambiguously describes a mandatory custody regime for aliens who are "described in paragraph (1)" of that subsection. *Id.* § 1226(c)(2). This language unambiguously refers to aliens who are in one of the four categories described in paragraph (1) *and* who are taken into custody upon their release from the criminal justice system. Congress did not describe – in paragraph (1) or elsewhere – a class of aliens who are in one of those four categories but who are *not* taken into custody upon their release from criminal justice custody. Because Congress limited the exception to the normal discretionary rule to aliens who are "described in paragraph (1)," aliens who are *not* described in that paragraph – either because they are not in one of the categories described in (A) through (D) or because they are not taken into custody at the end of their criminal justice detention – are unambiguously not within the narrow exception to section 236(a)'s general rule that the Government has discretion to detain or release an alien pending a deportation decision.[2]

The Board of Immigration Appeals ("BIA") has determined "that 'an alien described in paragraph (1)' references only a non-citizen who has committed a qualifying offense, and that the definition does not include the 'when . . . released' clause." *Rodriguez*, --- F. Supp. 3d at ---, 2015 WL 405633, at *3 (citing *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001)). The Government argues that the BIA's interpretation of the INA is entitled to deference pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). A

---

[2] Had Congress wanted to mandate the detention of any alien falling into the (A) through (D) categories in subsection (c) without regard to whether they were taken into custody immediately upon being released from criminal justice custody, it would have provided in subsection (a), "Except for aliens described in subsection (c)(1)(A)-(D)."

4

*Chevron* analysis, of course, begins with an inquiry into "'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary.'" *Stryker v. S.E.C.*, 780 F.3d 163, 165 (2d Cir. 2015) (quoting *N.Y. ex rel. N.Y. State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs. Admin. for Children & Families*, 556 F.3d 90, 97 (2d Cir. 2009)). The Court concludes that the INA's language is unambiguous and accordingly need not determine whether *Chevron* deference would otherwise be appropriate.[3]

The Government also points to a number of judicial opinions – including three from federal courts of appeals[4] – finding section 236 to be ambiguous. *See Olmos v. Holder*, 780 F.3d 1313 (10th Cir. 2015); *Sylvain v. Att'y General of the U.S.*, 714 F.3d 150 (3d Cir. 2013); *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012); *see also Miller v. Decker*, No. 15-CV-471(PKC), 2015 WL 1433276 (S.D.N.Y. Mar. 30, 2015); *Young v. Aviles*, --- F. Supp. 3d ---, No. 14-CV-9531(JMF), 2015 WL 1402311 (S.D.N.Y. Mar. 26, 2015); *Reynoso v. Aviles*, --- F. Supp. 3d ---, No. 14-CV-9482(PAE), 2015 WL 500182 (S.D.N.Y. Feb. 5, 2015); *Romero v. Shanahan*, No. 14-CV-6631(KBF), 2014 WL 6982937 (S.D.N.Y. Dec. 10, 2014); *Charles v. Aviles*, No. 14-CV-3483(MHD), 2014 WL 3765797 (S.D.N.Y. July 25, 2014); *Santana v. Muller*, No. 12-CV-430(PAC), 2012 WL 951768 (S.D.N.Y. Mar. 21, 2012); *Mendoza v. Muller*, No. 11-CV-7857(RJS), 2012 WL 252188 (S.D.N.Y. Jan. 25, 2012); *Gomez v. Napolitano*, No. 11-CV-

---

[3] At the next stage of the *Chevron* inquiry, the Court would ask "'"whether the agency's answer is based on a permissible construction of the statute."'" *Young v. Aviles*, --- F. Supp. 3d ---, ---, No. 14-CV-9531(JMF), 2015 WL 1402311, at *3 (S.D.N.Y. Mar. 26, 2015) (quoting *Chevron*, 467 U.S. at 843).

[4] A First Circuit panel issued an opinion finding the statute to be ambiguous but to include only aliens "detained within a reasonable time after their release from state criminal custody." *Castañeda v. Souza*, 769 F.3d 32, 44 (1st Cir. 2014). The court later withdrew the opinion and granted *en banc* rehearing of the issue.

1350(JSR), 2011 WL 2224768 (S.D.N.Y. May 31, 2011). Many of these opinions were issued prior to the Court's opinion in *Cruz*; the Court has considered the arguments raised therein and does not find them persuasive.

The Tenth Circuit's opinion in *Olmos*, filed after *Cruz*, does not affect its analysis. Like the other opinions finding the statute to be ambiguous, *Olmos* largely omits a discussion of subsection (a), the general rule that grants the Government the discretion to detain or release on bail aliens who are pending a deportation decision. 8 U.S.C. § 1226(a). But "'the words of a statute are *not* to be read in isolation; statutory interpretation is a holistic endeavor.'" *United States v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012) (quoting *Regions Hosp. v. Shalala*, 522 U.S. 448, 466 (1998) (Scalia, J., dissenting) (emphasis in original, other quotation marks omitted)).

*Olmos* discussed at length subsection (c), holding that the Attorney General could not circumvent Congress's mandate to take the aliens described in subsection (c)(1)(A)-(D) into custody by delaying. 780 F.3d at 1321. In the Tenth Circuit's view, it is a "plausible" reading of subsection (c)(1) that the Attorney General is required to take such aliens into custody *regardless of when they were released* from criminal justice custody. *Id.* But the opinion did not analyze subsection (c) as a narrow exception to the general grant of discretion contained in section 236.

Moreover, the unambiguous meaning of the statute is that the Government has the discretion to release any alien except for those who fall into the categories described in (A) through (D) and are moved directly from criminal justice custody to immigration custody. As to all other aliens who are pending deportation, they may be detained if they pose a threat to others or present a risk of flight or released if they do not.[5]

---

[5] In this regard, the Court expresses no opinion whether Talango, given his extensive criminal history, is a good bail risk.

## CONCLUSION

For the foregoing reasons, Talango's petition is GRANTED and the Government is ORDERED to provide Talango with a bond hearing no later than two weeks after the date of this Opinion.  Because Talango is entitled to a bond hearing by statute, the Court does not reach his constitutional claims.  The Clerk of the Court is respectfully directed to terminate the case.

**SO ORDERED.**

Date:  May 20, 2015　　　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　New York, New York　　　　　　　　　　**United States District Judge**